UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROY FRANK SCHAUTTEET,

    Plaintiff,

v.                                             Case No. 6:22-cv-530-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the partial denial of his claim for disability insurance benefits (DIB).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to properly assess Plaintiff's subjective complaints. As the ALJ's decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

    I.    *Background*

Plaintiff, who was born in 1965, claimed disability beginning January 6, 2018 (Tr. 220). He was 52 years old on the alleged onset date. Plaintiff obtained a high school education, and his past relevant work experience included work as carpenter

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

and a construction worker (Tr. 19, 57, 260).[2]  Plaintiff alleged disability due to carpal tunnel syndrome, low back pain, neck pain, right arm pain, and a heart attack (Tr. 259).

Given his alleged disability, Plaintiff filed an application for DIB (Tr. 220-21). The Social Security Administration (SSA) approved Plaintiff's claim initially and upon reconsideration, finding Plaintiff disabled as of April 4, 2020 (Tr. 73-116, 119). Plaintiff then requested an administrative hearing, disputing the established onset date and instead alleging an onset date of January 6, 2018 (Tr. 129-30).  Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified (Tr. 26-67).  Following the hearing, the ALJ issued a partially favorable decision finding Plaintiff not disabled at any time from January 6, 2018, to April 3, 2020, while finding that Plaintiff became disabled on April 4, 2020, in accordance with the reconsideration decision (Tr. 7-25, 114-16).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through June 30, 2021, and had not engaged in substantial gainful activity from the alleged onset date of January 6, 2018, through his date last insured of June 30, 2021 (Tr. 13).  After conducting a hearing and reviewing the evidence of record, the ALJ determined that, through the date last insured, Plaintiff

---

[2] In his application for benefits, Plaintiff indicated that he completed the twelfth grade (Tr. 260).  During the administrative hearing, Plaintiff initially stated that he completed only the ninth grade (Tr. 30) but later stated that he obtained his GED at the age of 16 (Tr. 51).  In the decision, the ALJ found that Plaintiff had at least a high school education (Tr. 19).  Plaintiff does not dispute that finding.

had the following severe impairments: lumbar and cervical degenerative disc disease, rheumatoid arthritis, carpal tunnel syndrome, obesity, and anxiety disorder (Tr. 14). Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14). The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work with the following limitations: work that is simple and routine; could stoop, kneel, crouch, or crawl but never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; should avoid exposure to hazards such as height or machinery with moving parts; could frequently reach (including overhead) with the upper extremities; could frequently handle and finger with the upper extremities; no production-rate pace work; could handle occasional changes in a routine workplace setting; and was likely to be absent from work on an unscheduled basis (including the probationary period) one day per month (Tr. 15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16).

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), the ALJ determined that Plaintiff could not perform his past relevant work (Tr. 18). Given Plaintiff's background and RFC, the VE testified that Plaintiff

could perform other jobs existing in significant numbers in the national economy, such as a bench assembler, a storage facility rental clerk, and a sorter-grader (Tr. 19-20). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled at any time from January 6, 2018, to April 3, 2020 (Tr. 20). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 215-16). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 405(g).

  II. *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an "impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine,

4

in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the

evidence preponderates against the ALJ's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

### III.   Discussion

Plaintiff argues that the ALJ erred by failing to properly assess Plaintiff's subjective complaints for the closed period from the alleged onset date through the established onset date, or from January 6, 2018, to April 3, 2020. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not

severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3); Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

As indicated, in addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms,[3] including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *2. A claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A). Rather, to establish a disability based

---

[3] The regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment. 20 C.F.R. § 404.1502(i).

on testimony of pain and other symptoms, the claimant must establish evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged pain or (2) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson*, 284 F.3d at 1225. Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2017 WL 5180304, at *3-9. If the SSA determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the SSA evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *3-9. When the ALJ does not find the claimant's subjective testimony supported by the record, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *See Mitchell*, 771 F.3d at 782.

In the decision, the ALJ considered Plaintiff's subjective complaints regarding pain and numbness, finding that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those

symptoms not entirely consistent with the medical evidence and other evidence in the record (Tr. 16-18).  The ALJ elaborated, stating that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the evidence of record showing that Plaintiff maintained the ability to perform light work (Tr. 16).  For several reasons, the ALJ's decision is not supported by substantial evidence.

Initially, the ALJ relied upon evidence created after the closed period, including treatment notes from May and August 2020 (Tr. 17-18, 538, 558-62).  The issue before the ALJ involved whether Plaintiff was disabled from January 6, 2018, through April 4, 2020, not any time thereafter.  The ALJ thus should not have relied on treatment notes outside of the closed period in considering Plaintiff's subjective complaints.

Further, throughout the course of his treatment, Plaintiff consistently complained of knee, back, neck, arm, shoulder, and hand pain as well as numbness and tingling (*see, e.g.,* Tr. 343, 378, 383-84, 436, 438, 486-87, 515, 525, 527, 531, 535, 539, 542, 548, 551).  Multiple physicians diagnosed Plaintiff with a plethora of issues such as possible loosening of his lumbosacral fusion, paresthesia of the skin, pain in the right and left arms, carpal tunnel syndrome of the bilateral upper limbs, lesion of ulnar nerve of the bilateral upper limbs, sprain of the right wrist, cellulitis infection of the right hand, impingement syndrome of the left shoulder, rotator cuff tear or rupture of the left shoulder, a rupture of the left proximal bicep tendon, and impingement syndrome of the right shoulder (Tr. 350, 456-57, 468, 487, 502, 527).  Plaintiff does not seek to rely on these diagnoses alone to establish disability, but instead points to

corroborative medical evidence supported by clinical and laboratory findings. *Cf. Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (per curiam); *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).

Both diagnostic imaging and treatment notes supported Plaintiff's subjective complaints. Namely, February 2018 X-rays showed minimal spurring in the mid and lower dorsal spine (Tr. 385); a June 2018 electrophysiological study showed evidence of bilateral carpal tunnel syndrome and bilateral ulnar neuropathy at Guyon's canal (Tr. 522-24); July 2019 X-rays showed some degenerative changes to the right hand, including spurring, decreased joint space, and some cystic changes to the CMC joint (Tr. 487); November 2019 X-rays showed osteoarthritis of the AC joint in the left shoulder (Tr. 508); a February 2020 MRI of the right shoulder showed widening of the AC joint with AC joint effusion compatible with AC joint strain/sprain, moderate tendinopathy/tendonitis of the subscapularis tendon with interstitial tearing of the distal aspect of the tendon, small glenohumeral joint effusion, downsloping lateral acromion, acute appearing full thickness tear and retraction of the supraspinatus tendon with gap of approximately 2.2 cm and without atrophy or fatty infiltration of the supraspinatus muscle, and interstitial tearing near the insertion of the infraspinatus tendon (Tr. 436); and an August 2019 MRI of the left shoulder showed findings compatible with tear and retraction of the long head of the biceps tendon, widening of the AC joint with large AC joint effusion consistent with AC joint strain/sprain, moderate tendinopathy/tendinitis of the subscapularis tendon with some interstitial tearing distal aspect of the subscapularis tendon, somewhat downsloping lateral

acromion, moderate to severe tendinopathy/tendinitis of the supraspinatus and infraspinatus tendons, acromion demonstrating type 2 morphology, multiloculated fluid collection in the subcoracoid bursa, and inferior AC joint spur effaced subacromial-subdeltoid fat plane exerting mass effect up on the anterior aspect of the supraspinatus, with focal full thickness tear of the distal supraspinatus tendon at its insertion (Tr. 434-35).  Although Plaintiff presented with some normal findings upon examination, Plaintiff also repeatedly presented with pain, limited range of motion, tenderness, diminished strength, weakness, decreased range of motion, decreased sensation, ongoing impingement, Popeye deformity of the left upper arm, and positive Tinel's, Phalen's, Hawkins', and Neer's signs (Tr. 456, 466, 502, 513).  The ALJ failed to fully consider these findings in determining that Plaintiff maintained the ability to perform a reduced range of light work during the relevant period, meaning that the decision was not supported by substantial evidence.

Likewise, the ALJ's finding that Plaintiff maintained the ability to frequently reach (including overhead) with the upper extremities during the relevant period appears at odds with the evidence of record.  Plaintiff's physicians repeatedly advised Plaintiff to avoid overhead lifting or lifting anything heavy either due to an impairment or a recent surgery (Tr. 467-68, 502, 513).  Indeed, during the relevant period, Plaintiff underwent open carpal tunnel release surgery, Guyon's canal ulnar nerve release, internal neurolysis, and application of volar splint on the right wrist in mid-June 2019 (Tr. 489, 531-32); left shoulder arthroscopy, arthroscopic debridement of the left shoulder, arthroscopic acromioplasty of the left shoulder, distal clavicle resection

arthroscopically, limited open repair of the left rotator cuff, and proximal biceps tenodesis with application of sling in October 2019 (Tr. 533-34); and left open carpal tunnel release surgery with application of short-arm splint in January 2020 (Tr. 512, 535-36).[4] In fact, given his multiple appointments for treatment and imaging, his surgeries, and his follow-up surgical appointments, the record appears at odds with the finding in the ALJ's RFC assessment that Plaintiff was "likely to be absent from work on an unscheduled basis (including the probationary period) of 1 day per month" (Tr. 15). During the period from May to August 2019 alone, Plaintiff appeared for multiple appointments each month (Tr. 442, 456-59, 434-35, 486-87, 489-90, 502-03, 531-32). Although those absences would be classified as scheduled rather than unscheduled, the ALJ should reconsider whether Plaintiff's noted absences during the relevant period support further restrictions.

    Finally, the ALJ cites to Plaintiff's apparent ability to remain active based on reports "he exercised 5 days per week working" (Tr. 17). The ALJ seems to base that finding upon True Health treatment notes from Noleene Allen, ARNP, listing in response to questionnaire-style questions, that Plaintiff exercised 5 days per week through his work (Tr. 377, 383, 389, 394, 401, 409, 419, 427). Admittedly, Plaintiff worked after the disability onset date, but, importantly, the ALJ determined that work did not constitute substantial gainful activity (Tr. 13). According to Plaintiff, he only

---

[4] Plaintiff also planned to undergo surgery to repair his right rotator cuff, but he lost his insurance so could not proceed with that surgery during the relevant period (Tr. 39-41, 52, 65).

worked "maybe 20 [hours] for a couple weeks and maybe another two days a week after that" for a total of approximately 12 days over a two-month period (Tr. 32-35). He had to leave that job because he had just undergone a rotator cuff surgery and "was forced to do things that [he] wasn't supposed to do and [he] was uncomfortable with" (Tr. 34, 38-39). Before that, Plaintiff mainly worked odd handyman jobs because he had two torn rotator cuffs and carpal tunnel syndrome in both hands, making it difficult for him to sustain full-time work for any length of time (Tr. 36-37, 42). The handyman jobs allowed him to pace himself and work when he felt physically able to but with pain due to his back, shoulder, arm, and hand issues (Tr. 45). He stated that he had to leave a job after six or seven weeks because that was when he tore his bicep off his tendon in his left arm after approximately four weeks into working there and could not continue with the work, despite trying for a couple weeks with assistance from others (Tr. 37-38). The heaviest weight Plaintiff lifted in those jobs was either 20 or 40 pounds, but he indicated that he could not handle those requirements given his impairments (Tr. 35-38).

    Notably, upon questioning by Plaintiff's representative, the VE testified that, if the hypothetical individual could only lift and carry one-third of the workday, light work would be precluded (Tr. 62-63). Plaintiff's representative then asked whether reducing the handling, fingering, and reaching from frequent to occasional would affect the occupational base, and the VE responded that such limitation would preclude Plaintiff's ability to maintain employment (Tr. 63). Given the deficiencies outlined above, including questions as to whether Plaintiff could engage in frequent

overhead reaching and how that will affect whether Plaintiff maintained the ability to perform a reduced range of light work with the noted limitations, remand is warranted.

    *IV.    Conclusion*

    For the foregoing reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence. Accordingly, after consideration, it is hereby

    ORDERED:

    1.    The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

    2.    The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

    DONE AND ORDERED in Tampa, Florida, on this 26th day of July, 2023.

*[signature: Mark A. Pizzo]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:    Counsel of Record